IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-02278-SKC-TPO

THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF DOUGLAS, COLORADO

    Plaintiffs,

V.

AETNA LIFE INSURANCE COMPANY,
*A Connecticut Corporation*,

    Defendant.

## ORDER RE: MOTION TO DISMISS (DKT. 9)

In 2013, Plaintiff Douglas County, Colorado (County or Plaintiff) entered into a single-year Master Service Agreement (MSA) with Defendant Aetna Life Insurance Company (Aetna) for the provision of "health insurance and pharmacy services to County employees." Dkt. 7, ¶¶5, 7. The MSA automatically renewed on an annual basis. *Id.* at ¶7.

In 2018, the parties amended the MSA to include pharmacy benefits, under which the County would receive—as consideration for making CVS Pharmacy the preferred pharmacy for County employees—a portion of the pharmacy rebates Aetna

1

collected from pharmaceutical companies.[1] *Id.* at ¶10. The terms of the pharmacy benefits were controlled by the "Self-Funded Prescription Drug Benefits Plan Statement of Available Services" and the related Fee Schedules. *Id.* at ¶¶24-26. The Fee Schedules enumerated the discounts, fees, and guaranteed rebate amounts for successive years. (Dkts. 1-3, 1-5, 1-7.) The 2023 Fee Schedule, which was effective as of January 1, 2023, guaranteed the County a three-year savings target. Dkt. 1-7, pp.11-12. The terms and conditions also provided that if the County chose not to renew at any point prior to December 31, 2025, Aetna was entitled to keep "any earned but unpaid rebates as of the date of the Early Termination date subject to any exception thereto provided [in the MSA]" (Early Termination Clause).[2] Dkt. 1-7, p.10.

On November 9, 2023, the County informed Aetna that it would not be renewing the MSA and would allow it to expire at the end of the year. Dkt. 7, ¶53. In response, Aetna told the County it would be enforcing the terms of the agreement that permitted it to keep the pharmacy rebates for the third and fourth quarters of

---

[1] The Rebates to the County are funded from retrospective amounts paid to Aetna "(i) pursuant to the terms of an agreement with a pharmaceutical manufacturer, (ii) in consideration for the inclusion of such manufacturer's drug(s) on Aetna's Formulary, and (iii) which are directly related and attributable to, and calculated based upon, the specific and identifiable utilization of certain Prescription Drugs by Plan Participants." Dkt. 1-1, p.40.

[2] This same provision is included in the 2018 (Dkt. 1-3) and 2021 (Dkt. 1-5) "Pharmacy Service and Fee Schedules to the Master Service Agreement." Like the 2023 Fee Schedule, each of these schedules covered multi-year periods.

2

2023. Dkt. 1-10. Atena's refusal to remit any further rebates has allegedly cost the County an estimated $1,120,000.00 in revenue. Dkt. 1, ¶59.

The County brought this action asserting claims for breach of contract, breach of the duty of good faith and fair dealing, declaratory judgment, and violations of Colo. Rev. Stat. §§ 10-3-1115 and -1116. Dkt. 7. According to the County, the Early Termination Clause is unenforceable. *Id*. at ¶58. Aetna moves for dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 9. The Court has jurisdiction under 28 U.S.C. § 1332. The matter is fully briefed, and no hearing is necessary. Having considered the Amended Complaint, Aetna's Motion to Dismiss and related filings, and the controlling law, the Court concludes the County has failed to assert any plausible claim for relief, and therefore, dismissal of this case is warranted.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

3

556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

### A. Breach of Contract

To establish a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a contract; (2) performance by them or some justification for their nonperformance; (3) failure to perform by defendant; and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). In this case, Plaintiff

4

contends the parties entered a single-year contract and that it had the contractual and legal right not to renew at the end of 2023. Plaintiff further contends Aetna breached the contract because it withheld agreed upon and earned pharmacy rebates. This breach of contract theory, however, depends entirely on excising the Early Termination Clause from the MSA. Aetna argues the Early Termination Clause is valid and enforceable. Aetna is correct.

As between the Amended Complaint and its Response Brief, it is not entirely clear upon what basis the County contends the Early Termination Clause is unenforceable. In its pleading, the County asserts Colorado law prohibits local governments, including counties, from entering multi-year contracts. Dkt. 7, ¶6. But this assertion is directly contradicted by Colo. Rev. Stat. § 30-11-101(1)(d), which provides that counties are empowered:

> (d) To make all contracts and do all other acts in relation to the property and concerns necessary to the exercise of its corporate or administrative powers. *Any such contract may by its terms exceed one year and shall be binding upon the parties thereto as to all of its rights, duties, and obligations.*

Colo. Rev. Stat. § 30-11-101(1)(d) (emphasis added).

The County also relies on Colorado's law regarding local government budgets and expenditures (LGBL), which states:

> (1) During the fiscal year, no officer, employee, or other spending agency shall *expend or contract to expend any money*, or incur any liability, or enter into any contract which, by its terms, involves the *expenditures of money in excess of the amounts appropriated.* Any contract, verbal or written, made in violation of this section shall be void, and no moneys belonging to a local government shall be paid on such contract.

5

>   (2) *Multiple-year contracts may be entered* into where allowed by law or *if subject to annual appropriation.*

Colo. Rev. Stat. § 29-1-110 (emphasis added). But this statute also expressly permits multi-year contracts "where allowed by law or if subject to annual appropriation." *Id.* § 29-1-110(2).

The express terms of the MSA are unambiguous that the funds budgeted for the plan are limited to one fiscal year. Dkt. 1-1, pp.13-15, §21 (Budget and Appropriation). The MSA also states

> [i]n no event shall Customer be liable for payment under this Services Agreement for any amount *in excess of the amount budgeted and appropriated*. Customer is not under obligation to make or agree to any future amendment or increased budget or appropriation for this Services Agreement but when appropriate will use its best efforts to approve any appropriate amendments. *Any potential expenditure for this Services Agreement outside the current fiscal year is subject to future annual appropriation of funds* for any such proposed expenditure.

*Id.* at pp.14-15 (emphasis added). Thus, the MSA complies with the requirements of the LGBL.

The Court also finds the County's contention that the Early Termination Clause converted the MSA into a multi-year agreement (or was itself a multi-year agreement) that violates the LGBL a stretch. Dkt. 7, ¶18; Dkt. 28, p.6. Under the plain language of the MSA, the initial contractual term was one year from the effective date, January 1, 2013, and it automatically renewed for additional successive one-year terms unless otherwise terminated by one or both of the parties. Dkt. 1-1, pp.1, 3-4. Nothing in the Early Termination Clause changes that. It has no

6

language binding the parties for more than one year at a time and to be sure, it specifically contemplates that customers may choose not to renew the agreement. Dkt. 1-7 at p.10.

The County also appears to argue that the Early Termination Clause converts the MSA into a multi-year agreement because it penalizes the County for exercising its right to terminate the agreement and conditions receipt of "contractually guaranteed benefits" on renewal of the contract through December 31, 2025. Dkt. 7, ¶52. But this mischaracterizes the nature of the rebates. First, the rebates are not "guaranteed benefits." By the plain language of the Early Termination Clause, these are "rebates" paid to the County contingent upon the County's renewal of the MSA for another year. *See, e.g.,* REBATE, Black's Law Dictionary (12th ed. 2024) ("A return of part of a payment, serving as a discount or reduction."). Second, as partial "rebates" *kept* by Aetna in the event the County exercised its contractual right not to renew the MSA, the monetary amount does not function as a penalty so much as the parties' bargained-for exchange in the event of an early termination. *Compare id. with* PENALTY, *id.* ("[A] sum of money exacted as punishment for either a wrong to the state or a civil wrong[.]"); and PENALTY CLAUSE, *id.* ("A contractual provision that assesses against a defaulting party an excessive monetary charge unrelated to actual harm.").

The LBGL only prohibits contracts that require a local government to spend more money than was appropriated, or multi-year contracts that are not based on

7

annual appropriations. Colo. Rev. Stat. § 29-1-110. The Early Termination Clause is neither. Nothing in it requires the County to spend *any* money, let alone money exceeding the County's annual appropriations. This type of agreement is not prohibited by the LGBL, and the County has cited no other law that would render this clause illegal.

Because the terms of the MSA, including the Early Termination Clause, are plain and unambiguous and do not violate Colorado law, the Court applies them as written. Here, the County—as was its prerogative—chose not to renew its contract with Aetna prior to December 31, 2025. It may not now avoid the Early Termination Clause simply because it regrets the bargain it made. *Roberts v. Adams*, 47 P.3d 690, 696 (Colo. App. 2001) ("By signing the contract, [parties] are presumed to know its terms and should be bound by them."). Aetna was within its rights under the contract to retain any earned but unpaid rebates, and the County's breach of contract claim is dismissed.

### B. Remaining Claims

Although Plaintiff's remaining claims are ostensibly premised on different legal theories, at their core, they are based on the same assertions as the breach of contract claim. For example, in its claim for breach of the implied covenant of good faith and fair dealing, the County asserts

> Aetna breached the implied covenant of good faith and fair dealing, by acts and omissions including, without limitation, *threatening to withhold payments* to the County, *withholding rebates* it agreed to pay

8

> to and earned by the County, and *treating a single-year contract as a multi-year contract* solely for its own enrichment.

Dkt. 7, ¶72 (emphasis added). But even overlooking the dubious legal premise of this claim,[3] the Court has already concluded that the Early Termination Clause did not convert the MSA into a multi-year agreement and that Aetna was within its rights under the contract to retain the unpaid rebates. Thus, Plaintiff has failed to plausibly allege Aetna acted unreasonably with respect to the parties' expectations under the MSA. *Amoco Oil Co.*, 908 P.2d at 498 ("The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations.").

The same is true of Plaintiff's claim pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, which govern the unreasonable delay or denial of benefits by an insurance company. Even accepting *arguendo* Aetna was acting as an insurer in this case (it was not) and that the rebates are first-party benefits (they were not), this

---

[3] This claim also fails because the implied covenant of good faith and fair dealing "may be relied upon *only* when the manner of performance *under a specific contract term* allows for discretion on the part of either party." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996) (emphasis added). The Amended Complaint does not identify any specific contract term over which Aetna had discretion. Indeed, the Early Termination Clause states that Aetna *shall* retain the unpaid rebates. And Plaintiff's suggestion that Aetna used its discretion to insert an illegal term into the contract not only fails to state a claim but also strains credulity. The Early Termination Clause was included in the 2018 and 2021 Fee Schedules, which the County accepted, signed, and ultimately benefited from. To suggest now—when they will no longer retain the benefit of the rebates—that Aetna unilaterally inserted this term beggars belief.

9

Court has already concluded Aetna did not breach the contract in keeping the unpaid rebates. Thus, there can be no claim for unreasonable delay or denial. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage.").[4]

*   *   *

For the reasons shared above, the Court GRANTS Aetna's Motion to Dismiss (Dkt. 9). Plaintiff's claims asserted in the Amended Complaint (claims 1 – 4), are hereby DISMISSED WITH PREJUDICE.

The Clerk of Court shall enter final judgment and close this case.

DATED: October 10, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge

---

[4] The County's claim for declaratory judgment overlaps entirely with its claim for breach of contract and is subject to dismissal on the same grounds. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018) (A "request for declaratory relief is improper [when] it is not independent of or separable from the other claims asserted in [the] action.").

10